## SMALLEY v. SOUTHERN RY. CO.

1. NONSUIT should be granted only in absence of any testimony tending to prove any fact necessary to be established by plaintiff.
2. WORDS AND PHRASES.—The terms used by Circuit Judge in granting nonsuit, "the testimony does not show," construed in connection with context to mean, "the testimony does not tend to show."
3. TRESPASSER.—A RAILROAD COMPANY owes no duty to a trespasser on its tracks, except not to do him any wanton or reckless injury.
4. IBID.—IBID.—NONSUIT.—No evidence here tending to show gross or wanton negligence on part of railroad in killing plaintiff's intestate, and nonsuit was proper.
5. IBID.—IBID.—AGED PERSONS—MISFORTUNE.—Rule applying to persons on railroad track, who from age or misfortune cannot take care of themselves, does not rise here.
6. IBID.—IBID.—TRAVELLED PLACE—EVIDENCE.—Testimony with regard to travel across defendant's track properly ruled out here, because no such issue was raised in pleadings, and because there was no evidence that it was a "travelled place."

Before GAGE, J., Greenville, July, 1899.    Affirmed.

Action by E. A. Smalley, administrator of Oscar Smalley, against Southern Railway Company. In granting the motion of nonsuit, the trial Judge said :

"In its last analysis it is is left for me to say whether or not there is any proof of negligence in this case. It is a motion for a nonsuit; and if there is any evidence in my mind going to show the want of ordinary care, it is my duty to

submit it to the jury.   But if in my mind there is no evidence
of ordinary care, it is my duty to decide it now.   In its last
analysis it is a matter of opinion resulting from ascertained
facts.   ·One man may be of the opinion from ascertained and
admitted facts that they led to one conclusion; another man
may be of the opinion that they led to another conclusion.
Now, in my mind, my honest judgment, the testimony does
not show a lack of ordinary care on the part of the defend-
ant, and it is my duty to say so here and now, and that is my
honest judgment.   A railroad is held to a certain degree of
care, ordinary care, but it has got the right of way; and if
another man asserts that right and takes the road, and the
railroad sees him, the railroad must stop; but that is not the
charge.   The charge is that being in 800 feet of the party
on a straight track, and the engineer on his  box,  that the
engineer ought to have seen the man, where he had no right
to be—at least, he did not have the same right there as the
railroad had; and I am asked to assume that a railroad run-
ning on its own track, 800 feet from the man, I am asked to
assume that the engineer on his box ought to see the man.
I do not think so.   I know that the engineer has something
else to do, too, than to watch the track, and the fireman has
to feed the box.   It is practically to make him an insurer of
the right of way of which he has the right to.   Now, that
is the law in the case.   If I was not satisfied of my position,
I would be less slow to take this view, if I thought it had less
justice in it; but I must take this view, and if I held other-
wise, I would be subjecting my honest judgment to a pre-
text.   Those being  my  views,  the  motion for nonsuit is
granted."

The plaintiff appeals on following exceptions:

"I.  His Honor erred in striking out that portion of the
testimony of J. H. Southern to the effect that there was 'a
good deal of travel' along the foot planks of the defendant's
trestle; it being submitted that this testimony was competent
as tending to affect the amount of care which should have

been exercised by the defendant's agents in crossing said trestle.

"II. He erred in holding that the evidence does not show a lack of ordinary care, and in granting a nonsuit on that ground; it being submitted that he should have held that the question was not whether the evidence showed a lack of ordinary care, but whether it tended to show a lack of ordinary care; and he erred in not holding that the evidence tended to show a lack of ordinary care, and in not refusing the nonsuit on that ground.

"III. He erred in holding that he was asked to assume that the engineer ought to have seen Oscar Smalley upon the track; whereas, he should have held that this was a question for the jury, and that there was evidence tending to show that the engineer or defendant's other agents did see Oscar Smalley upon the track, and that this evidence tended to show that they saw that he was in a dangerous position; he erred in not leaving these questions to the jury, and in not refusing a nonsuit.

"IV. It is submitted that the plaintiff's testimony tended to show that the train came to a stand at a railroad junction about 800 feet from the place where Oscar Smalley was lying in an apparently helpless condition, that the track was straight, and the view unobstructed, and that said Oscar Smalley was in plain and open view of the engineer and fireman on defendant's train, and the engineer was in his usual place where he could see the track; it is submitted that the Judge should have left it to the jury to say whether these facts tended to show that Oscar Smalley was seen by the defendant's agents, and that his condition was known to them, and whether the failure to make any effort to stop the train till too late was not negligence on the part of the defendants.    He, therefore, erred in not so holding, and in not refusing the nonsuit on this ground.

"V. It is submitted that the evidence tended to show that the defendant's agents saw Oscar Smalley before the collision in time to have stopped the train by the exercise of

reasonable precautions, and that they saw that he was in a dangerous position, from which he might not be able to extricate himself, or that he was insensible to his danger; and the Judge should have left it to the jury to say whether this was true, and whether the defendant's agents were guilty of negligence in not endeavoring to stop said train in time to avoid a collision; therefore, he erred in not so holding, and in not refusing the nonsuit.

"VI. The Judge erred in holding that 'the engineer has. something else to do than to watch the track, and the fireman has to feed his box,' meaning thereby that neither was under any obligation to keep a lookout along its track; whereas, he should have held that it is the duty of those in charge of a train to keep a lookout along its track for human beings who, from youth, or misfortune, or other cause, are unable to take care of themselves, or are insensible to their danger; and there being evidence tending to show that the defendant's agents neglected this duty, the nonsuit should have been refused.

"VII. It is submitted that if an engineer in charge of a train discovers, or by reasonable watchfulness may discover, a person upon the track apparently helpless, or infirm, it is his duty to use all ordinary means to avoid a collision without imperiling the lives of his passengers, and to stop the train in time to avoid such collision. It should have been left to the jury to say whether the defendant's agents were not negligent in this respect; and the Judge erred in not so holding, and in not refusing a nonsuit."

*Messrs. Haynsworth, Parker & Patterson,* for appellant, cite: *The testimony tended to show that Smalley's position was known to the employees of the defendant:* 53 S. C., 208; 20 L. R. A., 581; 52 S. C., 323. *It is the duty of a railway company to keep a lookout for helpless human beings on the track:* 10 Rich., 231; 20 S. C., 266; 30 L. R. A., 260; 36 L. R. A., 575; 14 S. E. R., 42; 60 Am. R., 145; 33 Md., 542; 54 Tex., 615; 27 Conn., 393; 20 S. C., 249, 261.

*Mr. J. R. Earle,* also for appellant, cites: *As to proximate cause:* 55 S. C., 192; 23 S. E. R., 267.

*Mr. T. P. Cothran,* contra, cites: *As to notice to engineer of deceased's presence on track:* 76 Fed., 205. *As to duty of railway companies to trespassers:* 19 S. C., 20; 23 S. C., 531; 34 S. C., 292; 49 S. C., 17; 51 S. C., 150; 30 Am. St. R., 50; 22 S. R., 900; 113 Ala., 640; 9 Ill. App., 605; 95 Ind., 286; 112 Ind,. 250, 385; 22 Fed., 609; 26 Minn., 357; 129 Mass., 440; 72 N. W., 783; 19 Ky. L., 612; 36 L. R. A., 213; 19 S. E. R., 863; 37 At., 1013; 90 Tex., 26; 23 S. E. R., 773; 74 Fed., 350; 67 Ib., 525; 66 Ib., 115; 52 Ib., 362; 76 Ib., 201; 52 Ib., 369.

April 5, 1900.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   The plaintiff, as the administrator of the personal estate of his deceased son, Oscar, brings this action to recover damages from the defendant company, sustained by reason of the killing of said Oscar through the alleged negligence of said company.   The allegations of the complaint may be stated briefly as follows: That on the morning of the 3d of August, 1897, about sunrise, the said Oscar was attempting to cross a very high and long trestle on the defendant's railway, when one of the defendant's passenger trains going north approached said trestle, and just before reaching the trestle the train "came to a pause," as required by law, at a point where it connected with a railroad from Greenville to Columbia, from which point the entire trestle was in plain and open view of the engineer in charge of the locomotive drawing said train; that while said Oscar was on the trestle, "by reason of having his foot caught between the ties of said trestle, which were close together, or by reason of some other accident or cause unknown to the plaintiff, he was unable to make further progress or to escape from the approaching train; that the dangerous position of the said Oscar Smalley was plainly mani-

fested to those in charge of the said engine, but they negligently and carelessly failed to stop the said engine, and negligently and carelessly run upon and over the said Oscar," inflicting the injuries from which he soon thereafter died. "That the said train of cars was what is known as a vestibule passenger train, and was supplied with the approved air brakes and best appliances for stopping cars; and by exercise of due care on the part of those in charge of the said train, it could have been stopped so as to have avoided injury to the defendant (? the intestate); that although the said Oscar Smalley was evidently in a dangerous position from which he could not extricate himself, in a plain and open place where he could easily have been seen for a long distance, the defendant's servants made no effort to stop the said train until after it had struck him," causing the injuries which resulted in his death as aforesaid.   The testimony on the part of the plaintiff tended to show the following facts substantially: That the trestle referred to is 715 feet in length and 34 feet in height, and that the distance from the stop-post to the south end of the trestle is 340 feet, and from the south end of the trestle to the second chair (the point where intestate seems to have been struck by the train), the distance is 500 feet, and that a person standing on the railroad track near the stop-post would be able to see the trestle throughout its entire length, and discern any object upon it; that a plank is laid down on the trestle upon which persons can walk, but there is a notice posted at the end of the trestle warning the public to keep off the trestle; that the first seen of the said Oscar on the morning when he was killed, he was sitting near the north end of the trestle upon the stringer (which was described as long pieces of timber, 6x8, nailed on the end of the crossties on the trestle running along with the rails), with his feet hanging down near to the ground; when next seen he had gotten up and was walking along, "looking down on the trestle like he was looking to see what the trestle hands had been doing," a pile driver being at work below the trestle; that the approaching train stopped at the stop-post

beyond the trestle, and when it started again, moving slowly on the trestle, about the time it was crossing the new run of Reedy River, which the trestle spanned, the deceased was seen stooping down, or squatting down, or sitting down, as the witnesses variously expressed it, where soon after he was struck by the train and killed.

At the close of the testimony adduced by the plaintiff, the defendant moved for a nonsuit upon the ground that there was no evidence tending to show any negligence on the part of the company, which motion was granted by his Honor, Judge Gage; whereupon plaintiff appeals upon the several exceptions set out in the record, which should be incorporated by the reporter in his report of the case.

We do not purpose to consider these exceptions *seriatim.* The rule with respect to the granting of a nonsuit is too well settled to require the citation of authority to support it. That rule is that where there is no evidence tending to show any fact necessary to be established to entitle the plaintiff to recover, then a nonsuit should be granted; but if there is any evidence tending to show such material fact, or facts, as the case may be, then the nonsuit should be refused, and the jury should be left to determine whether such evidence is sufficient to establish such fact. When, therefore, the Circuit Judge, in announcing orally his reasons for granting the motion for a nonsuit, which were taken down by the stenographer, and incorporated in the "Case," in the outset of his remarks, said: "If there is any evidence in my mind going to show the want of ordinary care, it is my duty to submit it to the jury," he very plainly recognized the rule as above stated. And it seems to us that in plaintiff's second exception, he misconceives what the Circuit Judge really held. It is quite common, in fact, we may say almost universal, to use the word "proof" for the word "testimony," and to employ the phrase "the testimony does or does not show" a given fact, instead of the more technically accurate phraseology "the testimony does not or does tend or go to show" such and such a fact; but when the con-

text shows the true meaning of the writer or speaker, it would be hypercritical for a Court to base a conclusion upon a mere inaccurate use of words; when, as is the case here, the true meaning is plain.

The third, fourth and fifth exceptions are based upon the unfounded assumption, for which there is no warrant in the testimony, that the deceased, at the time he was struck by the train, was in a peculiarly dangerous position, by reason of his foot being caught between the crossties, or by reason of some other cause which no witness speaks of, from which he could not extricate himself. There is no basis in the testimony for these exceptions, for all the testimony tends to show that the last seen of the deceased before the train struck him, he was stooping down, or squatting down, or sitting down, as the witnesses variously expressed it, not that he was lying down on the track; and several of the witnesses said that he was apparently looking down at the trestle hands, working the pile-driver below the trestle. It is contended, however, that the testimony tends to show that those in charge of defendant's train could easily have seen that the deceased was upon the trestle, and should have stopped the train before it struck the deceased. It may be a reasonable inference from these facts that those in charge of the train did see that he was on the trestle, but when did they see him? was it in time to have stopped the train and thus avoid the disaster? As to this the testimony is silent. While it is alleged in the complaint that the train was supplied with air-brakes and the best appliances for stopping cars, there is no testimony whatever as to the distance within which a train so equipped could be stopped. But suppose those in charge of the train did see the deceased in time, where is the ground for the inference that they also saw that he was in a position from which he could not extricate himself? The testimony shows that the witnesses who did see him drew no such inference, for they say that they thought he was stooping down looking at the hands working the pile-driver below, and did not suppose that he was unable to extricate

himself, until immediately before the train struck him, when it was manifestly impossible to stop the train.     But again, in order to ascertain what duty the defendant company owed to the plaintiff's intestate, it is necessary to inquire in what attitude he stood towards said company, and whether he had any right to be on that trestle.     There was no testimony tending to show that the deceased was in the employ of the defendant company, and no allegation and no testimony that he had any right to go upon that trestle.     On the contrary, the testimony tended to show that the company had posted notice warning the public to keep off that trestle.     The deceased was, therefore, a trespasser when he went upon that trestle; and the inquiry is, what duty does a railroad company owe to a trespasser on its track?     As was said in *Darwin* v. *Railroad Company,* 23 S. C., at page 535, "It must be manifest that a railroad company does not owe the *same duty* to a trespasser that it does to a passenger, or one of its employees, though we do not go to the extent of holding, as some of the cases (citing the cases) seem to do, that a railroad company owes *no duty* to one who trespasses upon its tracks, or unlawfully intrudes himself upon its engines or cars.     No one can safely disregard the ordinary instincts of humanity, and shield himself from responsibility for an injury done, even to a trespasser, by its wanton or reckless disregard of such instincts."     See, also, the case, *Hale* v. *Railroad Company,* 34 S. C., 292, where the plaintiff's intestate, while standing in the yard of the defendant company between the two tracks, watching some of the repairs which were being made on an engine, was struck by a shifting train that was backing towards him without signals or warning, and received the injuries from which he died.     The appeal was from an order of nonsuit, which was sustained.     In the opinion of the Court, the following language is used: "We do not see that the defendant  either did anything which, under the circumstances, it ought not to have done, or that it omitted to do anything which it ought to have done.     It appears that the defendant was shifting its train, in its own

yard, in the usual way, and that the deceased was where he had no legal right to be, and where the servants of the company had no reason to suppose he would be; and hence there was no occasion for them to keep a lookout, or give a signal that a train was approaching * * * But even if those in charge of the shifting engine saw, or ought to have seen, the deceased standing between the main line and the side track where the freight engine which he was watching stood, they would have had no reason to apprehend that he was within reach of the shifting train, as there was ample room for him to stand there in safety, as the evidence was that the two tracks were some ten or fifteen feet apart. Even if he had been standing on the track, where he had no right to be, and where defendant did have a right to move his train, accustomed as he was to visit the depot and telegraph office, he must have known that the tracks were used for shifting trains daily, and the engineer in charge of the shifting engine would naturally assume that he would get out of the way." That case is, therefore, in principle, very much like the case under consideration, which, however, in one feature is stronger; for in that case, the place where the disaster occurred was the railroad where persons were accustomed to pass for their own convenience, and there was no evidence that they had ever been forbidden or warned against so doing, while here the place where the disaster occurred was a trestle over which defendant's trains passed daily, if not oftener, and the evidence tended to show that the public had been warned to keep off that trestle. In a note by Mr. Freeman, in the case of *Central Railroad &c. Co. v. Vaughn,* 30 Am. St. Rep., at page 54, where he is discussing the question as to what duty a railroad company owes to a trespasser on its track, and after saying "that the company is responsible only for wilful or wanton injuries, or for injuries resulting from a degree of negligence equivalent thereto, is a principle regarding which there seems to be no disagreement (citing the cases)," states the true doctrine as follows: "The true principle, it is con-

ceived, is, that the engineer should see that the track is clear; but that when an obstruction is perceived, the proper course to adopt will depend upon whether it is a living or inanimate object, whether it is an intelligent human being, capable under ordinary circumstances of discerning the means of securing safety, or a brute, which has no guide but mere instinct. If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has a right to presume that he will get out of harm's way before the engine reaches him, and that it is not negligence to act upon that presumption"—citing the cases. So, in speaking of the same subject, it is said, in 19 Am. & Eng. Ency. of Law, 935-937: "Properly speaking, there is no positive duty owing from a railroad company to a trespasser on its track; it is not a part of its duty, in exercising ordinary care in the operation of its road, to provide against the possibility that trespassers may be on its track, and the extent of its duty is to refrain from wilful or deliberate injury. Except at crossings, it has the right to the exclusive use of its track and premises, and is entitled to assume that they are clear; it is not bound to anticipate that persons will be upon them, or to make provision for the safety of such persons," and in the notes quite a number of cases are cited. So in 3 Elliott on Railroads, sec. 1253, it is said: "The general rule is that the owner or occupier of premises owes no duty to a trespasser thereon except to do him no wilful or wanton injury. A trespasser is a wrongdoer, and it is a general principle of jurisprudence that the Court will not aid a wrongdoer. The fact that the trespasser is a wrongdoer does not, however, justify malicious, wanton or wilful maltreatment of him, and the failure to use reasonable care to avoid injury to him after the discovery of his danger, may sometimes be sufficient evidence of wilfulness or wantonness. But neither negligence nor wilfulness can ordinarily be shown in this way, where an adult, or person apparently able to take care of himself, is upon a railroad track, because the railroad employees have a right to assume, in the absence of any thing to the contrary, that he will get

off the track, or take such other precautions as may be available to avoid injury to himself." Having thus ascertained the measure of duty which a railroad company owes to a trespasser on its track, it seems to us clear that there was no evidence in this case tending to show any omission of duty, which the defendant company owed to the plaintiff's intestate, and hence no negligence on the part of defendant company, and consequently no error in granting the motion for a nonsuit. The fact that the deceased, while on the track, was in plain and open view of the engineer in charge of the approaching train, may, it is true, justify the inference that he was seen by the engineer, but it does not justify the inference that the engineer either saw or ought to have seen that the deceased was in such a position as that he was unable to extricate himself in time to stop the train, for the undisputed testimony of others (the plaintiff's own witnesses) is that they did not see anything of the kind—certainly not until immediately before he was struck by the approaching train, when it was manifestly impossible to stop· the train in time to avoid the disaster. For, even if the engineer saw the deceased on the track, he being a grown man apparently in possession of his physical and mental faculties, as he is the absence of any testimony to the contrary had a right to presume, he had the right to assume that he would get out of harm's way; and acting on that assumption would be no evidence of negligence, as is said both by Mr. Freeman and Judge Elliott, in the passage above quoted—certainly, it would be no evidence of such gross negligence as would be equivalent to wilfulness or wantonness.

The sixth and seventh exceptions being based upon the duty of the railroad company to take special care to avoid injury to a person found upon its track, who from age or misfortune, or who is apparently helpless or infirm, has no application whatever to this case; for there is not the slightest evidence that the plaintiff's intestate suffered under any kind of disability, either physical or mental. On the contrary, the undisputed evidence is that he was

a young man nearly 21 years of age, capable of earning and "was making about a dollar a day."

It only remains to consider the first exception, which imputes error to the Circuit Judge in striking out that portion of the testimony of the witness, Southern, in which he said there was a good deal of travel along the planks laid down on the trestle. While this exception was not pressed at the hearing, and is not even alluded to in appellant's printed argument, it was not formally withdrawn or abandoned, and, therefore, we do not feel at liberty to disregard it. We do not think, however, that this exception can be sustained. In addition to the ground taken by the Circuit Judge, that there was no allegation in the complaint charging the defendant with a want of care in allowing the public to use the walk on the plank laid down on the trestle, and such testimony was not, therefore, responsive to any issue made by the pleadings, we think there was no error in striking it out, for another reason. It was nowhere claimed, either in the pleadings or the argument, that the place where plaintiff's intestate was struck by the train was "a traveled place," where the intestate had a right to be. On the contrary, the appellant's whole argument, as shown by the cases which he cites, was based upon the assumption that the intestate was a trespasser. Besides, this same witness, Southern, testified that a notice had been posted at the end of the trestle, warning the public to keep off that trestle, and there was not the slightest attempt to show that the defendant company knew that a good many people used the trestle as a footpath or acquiesced, even silently, in such use. It is clear that this exception must be overruled.

The judgment of this Court is, that the judgment of the Circuit be affirmed.