6715

COOK v. SOUTHERN RAILWAY.

1. LIVE STOCK—DOGS—LOOKOUT—TRESPASSER—NEGLIGENCE.—A RAILROAD COMPANY is not responsible for killing a dog on a trestle taken there by his owner without any right to so use the track, there being no evidence that defendant's servants saw the signals of the owner or knew the dog was on the trestle. The company is not required to keep a lookout for trespassers on its track.

MR. JUSTICE GARY *dissents because he thinks there was evidence from which it may be inferred the defendant's servants saw or should have seen the dog.*

2. REHEARING refused.

Before MEMMINGER, J., Richland, December, 1906. Reversed.

Action by W. A. Cook against Southern Ry. Co. From judgment for plaintiff on Circuit, reversing judgment of Magistrate Moorman, defendant appeals.

*Mr. John T. Sloan,* for appellant, cites: *Rule in Danner's case does not apply to killing dog:* 73 S. C., 307; 10 Rich.,

·52; 55 S. C., 33.  *Plaintiff had no right to rely on statutory
signals:* 33 S. C., 136; 39 S. C., 514; 59 S. C., 246.  *Ap-
pellant only owed to plaintiff and his dog the duty it owes
to trespassers:* 57 S. C., 251; 64 S. C., 7, 546; 24 A. & E.
R. R., 57; 78 Ind., 292; 48 Miss., 112. *No evidence to show
the place of the accident was a traveled place:* 41 S. C., 20;
34 S. C., 299, 450; 59 S. C., 433; 64 S. C., 553.

*Mr. Porter A. McMaster,* contra, cites: *Question of fact
decided below is binding here:* 73 S. C., 296, 528.  *Dog
is property: Sally* v. *R. R.,* 54 S. C.  *Railroad is liable for
negligently killing a dog:* 73 S. C., 308; 55 L. R. A., 423;
59 S. C., 277; Thomp. on Neg., 737-8.

The opinion in this case was filed August 15, 1907, but
remittitur held up on petition for rehearing until

November 28, 1907.  The opinion of the Court was de-
livered by

MR. JUSTICE WOODS.  The plaintiff's action in the court
of Magistrate Moorman was to recover of the defendant
forty dollars, the value of a hound, under this allegation:
"That on the 31st day of August, 1906, while plaintiff was
crossing a trestle, in the county above named, commonly
known as Frost's, in the early morning between the hours of
5 and 6 o'clock, plaintiff was preceded by his hunting dog,
a white-spotted hound, by name of Traveler, and hearing a
train approaching and seeing the danger to the dog, plaintiff
signaled to the engineer with a lantern and commenced to
signal at a distance where the engineer could have seen the
danger that this plaintiff was in, but that defendant, its
agent and servant, wilfully, intentionally, and wantonly, and
in utter disregard to plaintiff's property refused to stop the
train, and ran over the dog, dismembering the animal, that
had no chance to escape from the trestle."

The judgment of the magistrate in favor of the defendant
was reversed on appeal, the Circuit Judge holding "that the

overwhelming weight of the evidence shows both negligence and wilfulness in running over the dog in question."

There is no evidence whatever that the railroad company assented to the use of its trestle as a footway. On the contrary, the evidence was uncontradicted that there was a warning against such use, and the plaintiff testified that he supposed those who went on it did so at their own risk.

The plaintiff's case then depends on the claim that he had a right to deliberately take his property on the defendant's railroad trestle and require the defendant to stop its trains, in order that he might transport his property over the trestle with convenience and safety. To sustain such a claim would be to make the use of its own property by the railroad company subordinate to its unlawful use by a trespasser. The law imposes no duty on the railroad company to keep a lookout for trespassers on its track. *Smalley* v. *Ry. Co.*, 57 S. C., 243, 35 S. E., 489; *Jones* v. *Ry. Co.*, 61 S. C., 556, 39 S. E., 758. There was no evidence that the defendant's servants saw the plaintiff's signals or knew that the dog was on the trestle.

The difference between a case like this in which the plaintiff asserts a right of way over the trestle superior to that of the railroad company and those cases where liability attaches for the destruction of live stock wandering on the railroad, or of a dog seen by trainmen, disabled on the track from accident, is too obvious for discussion.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.

MR. JUSTICE GARY, *dissenting.* The plaintiff testified: "Bennett and I and the dog were on Frost trestle of Southern Railway Company, in Richland County. I saw engine headlight about half a mile from me; I waived my lighted lantern to make the train stop, but it came right on, did not even slow up. Not running very fast. It ran over the dog, which was about forty yards from me. I barely had time to get out of way of engine."

34—78

Ben P. Bennett testified: "I was with Mr. Cook on the trestle; saw the dog killed by train; saw the men on the engine, and saw Mr. Cook signaling with his lighted lantern."

Cross-examination: "I was coon hunting. I slipped out on a sill to save myself. Trestle was a long one. Trestle was just above Frost's station. Don't know just how long, but a real long one. Dog killed near middle of trestle. Could not have run to the end before he would have been struck."

From the foregoing testimony it could be reasonably inferred, either that the servants in charge of the train saw the dog, or that the failure to see him was due to a reckless disregard of duty; which is equivalent to wantonness and wilfulness. *Pickett* v. *Ry.,* 69 S. C., 445.

As there was some testimony tending to sustain the finding of fact by his Honor, the presiding Judge, and as this is a law case, such finding is not reviewable by this Court.

Conceding that the dog was a trespasser, the defendant did not have the right to inflict upon him a wilful or wanton injury.

For these reasons I dissent.

November 28, 1907. Per Curiam. After careful examination of the petition for rehearing we are unable to discern any issue that has been overlooked in the opinion of this Court.

The petition is, therefore, dismissed, and the order staying the remittitur is revoked.