## HALTIWANGER, ADM'X., v. COLUMBIA, NEWBERRY AND LAURENS R. R.

1. NONSUIT—RAILROADS.—Where it appears that a man has been killed on a railroad track at a place other than a public crossing or a "traveled place," and where there is evidence tending to show that engineer saw deceased on the track before his engine struck him, nonsuit is improper.

2. NEGLIGENCE—RAILROADS—TRESPASSER.—A person walking on a railroad track, where people are accustomed to use it as a footpath, but on which the public or the deceased had not acquired a legal right to travel, although no objection to such use had been made by the company, is a trespasser; and for injury to such person the company is only liable in case of wilful or wanton injury, or such gross negligence as would amount to a reckless disregard of human life.

3. APPEAL—NEW TRIAL.—On appeal from order refusing motion for new trial, this Court cannot consider the weight or effect of evidence.

4. REHEARING refused.

Befor ALDRICH, J., Lexington, September, 1899. Reversed.

Action by Elizabeth Haltiwanger against Columbia, Newberry and Laurens R. R. Co. The charge is as follows:

"Mr. Foreman and gentlemen of the jury: The plaintiff by her complaint, which has been read in your presence, seeks to recover, for the reason therein stated, the sum of $7,000 damages from the defendant railroad company. I need not read over this complaint to you again. The defendant in its answer denies, first, that the plaintiff is administratrix, as alleged; and, second, denies each and every allegation in the complaint. The defendant is a railway corporation. A corporation is created by law, and in this State a corporation is such by reason of the laws of South Carolina, passed for the purpose of creating such corporations; and if that be so, as it is, a corporation is a legal body, has all the rights, privileges and immunities given to it by its charter, and has the right to exercise the same. Among other rights given to it, or permitted to it, is the construction of a track, and the operation of engines and cars along that railroad track. Ordinarily speaking, that track is set apart, by the laws of this State, for the exclusive use of the railway company for the passage of its engines and cars; and the exceptions, where others have the right to the use of that track, must arise under the law, and where they have a right to the use of any part of the track, they must derive that right from some legal source. In passing upon the cause of litigation

between the railroad company and the individual, you would give each the benefit of the law, according to which each respectively has its right under the law, and deprive neither of its rights.

"I shall endeavor to give you the law of this case, as I think the law is applicable to it. I am responsible for that. It is your duty to take the law from the Court, to weigh the testimony, pass upon the testimony, and to find a verdict according to that testimony which you have heard from the witnesses, and the law as the Court shall give it to you. There are a great many requests to charge in this case, and I will save time, if, in connection with these requests to charge, I state my views as to the law of the case. 'That if plaintiff was guilty of negligence to such a degree that it was the proximate and immediate cause of the injury, he could not recover, even if defendant was negligent; that, on the other hand, if defendant was guilty of such negli      s was the proximate and immediate cause of the injury, plaintiff is entitled to recover, though he was guilty of negligence, provided his negligence was not a proximate and immediate cause of the injury; and that if plaintiff was guilty of negligence, which was not the proximate cause, and such cause was the failure of defendant to exercise reasonable care and prudence to avoid the injury, plaintiff would be entitled to recover.' That is correct, and I so charge you. Now, this word 'proximate' means the primary cause, or that which produces the injury.

" 'Where persons have long been accustomed to use a railroad track, at a certain place, and the company knew that persons were likely to be on the track at such place, it is the duty of the company, in operating its trains, to use more care at such place than at other places along its road where it had no reason to believe that persons were likely to be on its track.' Gentlemen, there are several requests along that line, which I will take up in connection with that, to prevent repetition. 'The duty of a railroad company is governed by the general principles of law, that every one is obliged, upon

consideration of humanity and justice, to conform his con-
duct to the rights of others, and in the prosecution of his
lawful business, to use every reasonable precaution to avoid
their injury.' That is correct, and I so charge you. 'That
railroad engineers should observe more caution in running
trains at places where they know that persons are likely to
be on the track, than elsewhere, even if those persons are
trespassers, and a trespasser upon the track of a railroad is
entitled to be protected from gross negligence.' That is
correct. They have a right to be protected from gross
negligence. 'That a wrongdoer is not necessarily an outlaw
as to his property, still less as to his person, and a railroad .
company has no right to inflict wanton injury on persons
who are unlawfully upon its track.' That is correct, and I
so charge you.

" 'When in action to recover damages for personal inju-
ries, the defense of contributory negligence is relied on, the
defendant is liable, although the plaintiff's negligence essen-
tially co-operated to produce the injury, when it could have
been averted by the exercise of reasonable care and ordinary
prudence on the part of the defendant or his servants, after
discovering, or after time when they ought to have dis-
covered, the danger in which the party injured stood.' That
is correct; it seems to be taken from the text-books.

" 'Where a person on a railroad track is killed by defend-
ant's train, defendant is liable, if the injury could have been
avoided by the use of ordinary means at command by those
in charge of the train, after deceased was seen by them to be
in danger from the train.' That is correct, and I so charge
you. The fourth request is stricken out.

" 'Where an engineer, by keeping a reasonable and careful
lookout, could have discovered a man, who was, apparently,
on or so near the rail of the track as to expose him to danger
from the engine as it passed, and could, by the use of the
appliances at his command, and without peril to those on the
train, have stopped the train in time to have avoided such
injury to such man, and failed to do so, the railway company

was guilty of negligence, and liable for the death of such man, notwithstanding his contributory negligence.' That, gentlemen, is correct, with certain limitations and explanations that I will give you later on, in which I will speak further as to the duties of an engineer.

" 'That if the jury find that the plaintiff was killed at a place on the track of the defendant company where persons were in the habit of walking, that the deceased was on said track, and that the trainmen either saw, or by the exercise of ordinary care could have seen, him in time to avert the danger, and failed to exercise that care, then the defendant is liable.' That, also, with the explanation I will give you further on, I charge you.

"The defendant's second request is as follows : 'That gross negligence is the doing of something to another person, or the failure to do something for him, in a manner that indicates utter indifference to his rights.' That is correct; I so charge you.

" 'That wantonness is the intentional doing of something or failure to do something, to suit one's own whim or will, regardless of the rights of others, when the party knows, or is under legal obligation to know, that the doing or failing to do such act might cause injury to other persons.' That is correct; I so charge you. And I further charge you that negligence is the want of ordinary care, and that the absence of ordinary care means negligence. This plaintiff alleges in her complaint that her intestate is dead, and was killed by the railroad train or the engine. That allegation alone would not support a cause of action; therefore, it becomes essential to see what is the real cause she bases her action upon, and we turn to the complaint. It is based upon this allegation by the plaintiff : 'That the defendant negligently, recklessly, unlawfully and wantonly caused said locomotive and train of cars to rapidly approach said intestate, J. H. Haltiwanger, and strike him, injure him, kill him,' and so on. Therefore, plaintiff, to recover, must sustain these allegations by proper proof; having alleged that her intestate is

dead, and that his death was occasioned by negligence, reck-lessness, unlawfulness and wantonness of the defendant company, it is incumbent upon her to prove that; and if she fails to prove it by the preponderance of the testimony, then her cause of action fails.

"The fourth request is : 'That this action being based upon an allegation of gross negligence and wantonness, which is denied in the answer, it can only be maintained by proof that the alleged injury to the deceased was caused by the grossly negligent or wanton conduct of the engineer or other agent of the company in the running of the train, after he knew, or was under legal obligations to know, that deceased was on defendant's track, and in a position of danger.' That I have to modify in this particular : 'That this action is based upon an allegation of gross negligence and wantonness, be-cause, as I have charged you, in the allegation it is based also upon negligence. And just here I may as well say that for plaintiff to make out her case, she must, by the prepon-derance of the testimony, show that her intestate was killed, that the death was occasioned by the negligence, reckless-ness, unlawfulness and wanton conduct of the defendant. A railroad engineer is presumed to exercise ordinary care, and in the absence of ordinary care he is expected to do that which engineers, who are properly suited to their employ-ment, usually exercise in the discharge of the duties of their offices as engineers. And I have defined to you what gross negligence is, and they, in discharging their duties, must not be guilty of gross negligence or wantonness.'

"The defendant's fifth request is : 'That the complaint in this action does not allege a legal right in the public to use the track of defendant's road, between Hilton and Chapin.' That is correct, and I so charge you. It does not state in the complaint that the intestate, Mr. Haltiwanger, had a legal right to be upon a railroad track, and even at the places where they have a legal right to be upon the track, they, while passing over the track, or upon the track, must exer-

cise the ordinary care and diligence, to which I shall refer a little later.

" 'That at ordinary places on the track, not at a public crossing or traveled place, a railroad engineer does not owe any duty to the public, to be on the lookout along the track for persons who may be on the track. That a public crossing is where a public highway crosses the track of a railway. That a traveled place means a place, as used in our statutes on the subject, where the public not only travels, but where they have a right to travel.' Those three requests I charge you as law, with this further statement that at a public place, the statute law requires certain signals to be given to warn the public, and the same at a traveled place, as I have described to you. When the railroad company complies with the statutory provisions in giving those signals, that is, blowing the whistle or ringing the bell, as provided by statute, they have done their duty in that respect; and at places other than that, the railroad company, the engineers and officers in charge of its engines, are expected to use only that ordinary care which engineers commonly use, and are expected to use, in traveling over such places.

" 'Ninth request. That a railroad company is under no obligations to the public, or the trespasser himself, to be on the lookout for a trespasser on its tracks, or to take any steps before discovering such a one on the track, to prevent injury to him by the ordinary running of its trains.' That is correct, and I so charge you. The meaning of that, or one of the meanings, is this : Though the railroad company having exclusive right to its roadway, having the prior right to use its roadway, has a reasonable right to expect that the public, strangers to it, and trespassers upon its track, will not be there, will not interfere with their rights ; and having a right to suppose so, the law puts no duty upon them, to assume that the public, or a trespasser, is getting upon its track, and placing himself or themselves in a position of danger.

" 'Tenth. That an action for killing a man by the running of an engine, pulling a railroad train, which is based upon

an allegation of, and depending upon, gross negligence or wantonness, denied in the answer, can only be maintained by proof, which would make out a *prima facie* case against the engineer or other person running the engine, in a criminal proceeding for the killing of the man.' That is correct, and I so charge you, in connection with what I have told you as to the liability of the railroad company for want of ordinary care—the engineer's want of ordinary care.

" 'Eleventh request. That an engineer running an engine on a railroad track in an ordinary manner, who sees a man walking along the track in front of him, has the right to assume that the man is possessed of the ordinary faculties of sight and hearing, and that the instincts of self-preservation will cause him to use his sight and hearing, to warn him of an approaching train, and that he will get off the track, unless such a man is known, or appears to the engineer, to be lacking in sight, hearing or the instinct of self-preservation, or is seen to be in a position of special danger.' The railroad company has the right to suppose, as the request here says, that the man on the track will leave the track to avoid the danger, unless it knows that the man is deaf, or has impaired hearing or sight, or it sees something which would cause a reasonable engineer to suspect the man was in special danger.

" 'Twelfth. That a man who uses a railroad track as a footpath is bound to be on the lookout for the approach of trains, and to use both his sight and hearing to warn him of their approach, especially when he knows or has been informed that a train is about to approach.' Well, gentlemen, I charge you that is correct. He is bound to use his senses at all times when walking on a railroad track—that is, if he has senses, and is an ordinary, reasonable being. What I mean by senses, is if he is an ordinary being who has not been deprived of the ordinary faculties given by God to the average man, or for some reason is deprived of acting as a man in his senses would act under those circumstances.

" 'Thirteenth. That the measure of damages in such a

case as this is such a sum as the jury think proportionate to the injury sustained by the parties for whose benefit the action is brought, as proven by the evidence, and that the jury cannot give punitive damages.' That is correct; I so charge you.

"The fourteenth request is about the same request: 'That in such a case as this, a jury cannot give speculative damages, or damages for any injury that has not been established to their satisfaction by the evidence.' That is correct, and I so charge you. The meaning of that is this: Damages are divided generally into two kinds, compensatory damages and punitive damages. Compensatory damages means such damages as will compensate a person for a loss or injury actually sustained—such damages as will make him whole, if such expression can be permitted. While, on the other hand, punitive damages means punishment and reward, not in the spirit of compensation, but a punishment to a wrong-doer for the wrongful act he has committed.

"Now, under the act of the legislature of this State, an act under which this suit was brought, you can only give compensatory damages, and in no event can you exceed $7,000, that is the amount asked for; you can give any lesser amount which, in your judgment, you think (if you think plaintiff is entitled to any damages at all), as low down as the nominal sum, from one cent to $7,000.

"I had overlooked one thing which I had meant to say in regard to the limitation upon the requests as to the use of a road. I have told you, you know, what a highway is. The public have a right to pass over a railway at a highway crossing the track; they have also the right to pass at a traveled place, where the public not only are accustomed to travel, but have the right to travel there. Now, to acquire a permissive right, or to acquire the right to pass over the lands of another, it must be because one has used it for twenty consecutive years, and by long usage, continuous usage, in which the public, by their conduct, assert that they have the right, in which they deny the right of plaintiff, the

owner of the soil, to prevent their going over, then by long lapse of time, by acquiescing on the part of the owner of the soil, the right of user, the easement, as it is termed, to cross over the soil, may ripen into a legal right; but use short of twenty years would not do it. Further, one may use the land of another, or the track of a railway, for any number of years, and if that usage is by permission or by the acquiescence of the owner of the soil, or the railroad track, it would not amount to a legal right, it would not amount to an easement, would amount merely to a permission; so when one may have the right to pass over the soil of another, or across the railroad track, or along the railroad track, it may be suffered to be done, permitted to be done by the owner of the soil, or the owner of the railroad track, but the permission does not vest in the person so using the soil, a right to that soil—that is, a legal right.

"Now, I think I have gone through the main features of this case, and it is for you, gentlemen, to pass upon them. I am not allowed to charge upon the facts. I have given you the law as I understand it, and it is now for you, gentlemen, under the law and the testimony, as you have heard it, as understood by your intellects, and as passed upon by your consciences, to render a verdict in accordance with the law and the testimony. * * *"

From judgment for plaintiff, defendant appeals on following exceptions:

"1. Because his Honor, on the motion for a nonsuit, should have held that there was no evidence to show any breach of duty owed by the railroad company to the deceased, or any negligence on its part or the part of its servants in the acts causing his death.

"2. Because, upon said motion, his Honor should have held that the plaintiff's evidence, showing beyond question that the accident causing the death of the deceased, occurred while he was walking on the track of the defendant company at a place which was neither a 'public crossing' nor

a 'traveled place,' and there being no evidence tending to show that he was seen by defendant's servants operating the train which killed him, the nonsuit should have been granted.

"3. Because upon said motion, the evidence showing that the accident which caused the death of the deceased occurred while he was walking on the track of the defendant company at a place which was neither a 'public crossing' nor a 'traveled place,' and there being no evidence to show that he was apparently deprived of the use of his senses or in any position of special danger, his Honor should have held that there was no evidence tending to prove negligence on the part of defendant, and the motion should have been granted.

"4. Because, upon the request of the plaintiff, his Honor charged the jury as follows, to wit: 'Where an engineer, by keeping a reasonable and careful lookout, could have discovered a man, who was, apparently, on or so near the rail of the track as to expose him to danger from the engine as it passed, and could, by the use of the appliances at his command, and without peril to those on the train, have stopped the train in time to have avoided such injury to such man, and failed to do so, the railway company was guilty of negligence, and liable for the death of such man, notwithstanding his contributory negligence,' thereby indicating (a) That it is the duty of a railroad company to have its engineers keep a lookout along its track, even at places other than a 'public crossing' or 'traveled place,' for trespassers or other persons who may be on the track. (b) That if the engineer sees a person walking on the track of the company, even at a place other than a 'public crossing' or 'traveled place,' he has no right to presume that the person will get off the track, but is bound to stop his train, if it can be done, by the use of the appliances at his command and without peril to those on the train. (c) And that even if the plaintiff was guilty of contributory negligence under such circumstances, the defendant would be liable for his death; and (d) Because said request was a charge on the facts, as it embodied a statement

2—64

that under such circumstances 'the railway company was guilty of negligence, and liable for the death of such man, notwithstanding his contributory negligence.'

"5. Because, at the request of the plaintiff, his Honor charged the jury as follows, to wit: 'That if the jury find that the plaintiff was killed at a place on the track of the defendant company where persons were in the habit of walking, that the deceased was on said track, and that the trainmen either saw, or by the exercise of ordinary care could have seen him, in time to avert the danger, and failed to exercise that care, then the defendant is liable,' thereby indicating (a) That the defendant company owed a duty to have its engineer looking out for persons on the track at the point where plaintiff was killed. (b) That if the engineer saw deceased on the track at such point, he had no right to assume that deceased was in the exercise of the ordinary senses, and would from a desire of self-preservation, step off the track so as to allow train to pass, but was under the obligation to stop his train. (c) That the mere presence of a person on a railroad track in front of a train not apparently devoid of any of his senses, is in such position of danger as would require the railroad company to stop its train so as to avert danger to such person. (d) Because said charge was a charge upon the facts of the case, embodying a statement that 'if, under the circumstances stated, the defendant failed to exercise the care there stated, then the defendant is liable.'

"6. Because his Honor, the presiding Judge, refused defendant's first request to charge, 'This action is not based on the violation of any duty owed by defendant company to a passenger or employee, but upon the alleged grossly negligent or wanton injury to plaintiff's intestate while he was walking for his own convenience on the track of defendant company,' thereby failing to give to the jury a correct understanding of the issues arising under the pleadings in said cause.

"7. Because his Honor modified defendant's fourth request to charge by instructing the jury as follows, to wit:

'That I have to modify in this particular : that this action is based upon an allegation of gross negligence and wantonness, because, as I have charged you, in the allegation, it is based also upon negligence,' thereby indicating that in the absence of the exercise of the high degree of care at the time and place testified to, the defendant would be liable.

"8. Because his Honor modified defendant's tenth request to charge by saying: 'That is correct; and I so charge you in connection with what I have told you as to the liability of the railroad company for the want of ordinary care, the engineer's want of ordinary care,' thereby indicating that the railroad company would be liable, if there was an absence of ordinary care on the part of the engineer in the killing of a man on its track at a place other than a 'public crossing' or 'traveled place.'

"9. Because his Honor should have held, on the motion for a new trial, that the verdict was against the clear preponderance of the testimony, there being no testimony whatever to establish negligence on the part of the defendant, and should have granted the motion for a new trial."

*Messrs. George Johnstone* and *W. H. Lyles,* for appellant. The latter cites : *As to the question of nonsuit:* 41 S. C., 20; 34 S. C., 292; 57 S. C., 243.

*Messrs. G. T. Graham* and *P. H. Nelson,* contra, cite : *Under pleadings plaintiff had the right to introduce any evidence tending to show negligence:* 24 S. E. R., 993; 29 S. E. R., 905; 31 S. E. R., 212. *Where there is evidence tending to show negligence, case must go to the jury:* 20 S. E. R., 750. *Duty of company to persons on its track:* 17 Wall., 657; 37 Cal., 409; 42 La., 302; 27 Ct., 405; 60 Mo., 476; 68 Vt., 567; 72 Tex., 79; 58 Wis., 646; 13 Pac., 438; 35 S. E. R., 514; 8 At., 42; 12 S. W., 764; 29 S. E. R., 905; 35 S. E. R., 513; 24 S. E. R., 993; 7 S. W., 875; 74 Ga., 864; 19 Ency., 937; 1 Dill., 579; 33 Md., 542; 54 Tex., 615; 26 S. E. R., 969; 28 S. E. R., 308; 2 Sher. and Red. on

Neg., sec. 484; 23 S. E. R., 773; 24 S. E. R., 229, 698; 27 S. E. R., 27; 65 Pa. St., 269; 163 U. S., 353. *Defendant having permitted public to use the road where deceased was killed, it was bound to use reasonable care to avoid injuring him:* 29 Md., 421; 36 Mo., 367; 33 Md., 543; 2 Thomp. on Neg., 1157; 27 S. E. R., 21, 75; 12 Tenn., 200; 6 S. E. R., 80; 8 A., 43; 46 Am. R., 672; 102 U. S., 235; 92 N. Y., 289; 13 P., 438; 2 So., 738; 19 Ency., 937; 68 Vt., 567; 33 S. W., 945; 34 S. W., 842; 174 Ga., 864; 72 Tex., 79; 37 Am. & Eng. R. R. Cas., 317; 7 S. W., 875; 12 S. W., 764; 75 Wis., 654; 58 Wis., 646; 41 Am. & Eng. R. R. Cas., 562; 42 La., 302; 44 Am. & Eng. R. R. Cas., 287; 27 Ct., 405; 10 M. & W., 545. *Testimony here shows gross negligence on part of defendant:* 27 S. E. R., 75; 12 S. W., 766; 33 S. W., 945; 72 Tex., 79; *and wantonness:* 14 S. E. R., 943; 31 S. W., 225; 29 S. E. R., 905; 35 S. E. R., 511; 74 Ga., 867; 13 P., 438. *Charge must be considered as a whole:* 22 S. C., 191; 23 S. C., 199; 29 S. E. R., 259; 33 S. E. R., 497; 20 S. E. R., 84. *The parts of charge complained of are not indication of opinion nor charge on facts:* 28 S. E. R., 198; 27 S. E. R., 555, 613; 24 S. E. R., 812; 33 S. E. R., 497. *Stating hypothetical case is not charge on facts:* 25 S. E. R., 797; 22 S. E. R., 164; 27 S. E. R., 555, 613; 28 S. E. R., 193; 33 S. E. R., 497. *Railroad company is liable for reckless or wanton killing of a human being at any point on its track:* Pierce on R. R., 230; 19 S. C., 27; 2 Thomp. on Neg., 1162; 12 S. W., 766; 7 S. W., 875; 27 Ct., 405; 74 Ga., 867; 34 S. W., 842; 42 La., 302; 44 Am. & Eng. R. R. Cas., 287; 74 Tex., 79; 37 Am. & Eng. R. R. Cas., 317; 68 Vt., 567; 75 Wis., 654; 41 Am. & Eng. R. R. Cas., 562; 13 P., 438; 8 A., 42; 33 S. W., 945; 19 Ency., 937; Bus. on Per. Inj., sec. 73.

The opinion in this case was filed February 27, 1902, but remittitur was stayed on petition for rehearing until

April 18, 1902. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff, who is the administratrix of her deceased husband, John H. Haltiwanger, brought this action for damages against the Columbia, Newberry and Laurens Railroad Company, to recover damages occasioned by the killing of her said intestate by the alleged negligence of the defendant company. The undisputed facts are that said intestate, while walking along the track of defendant's railroad, at a point which was neither a railroad crossing nor a "traveled place," was struck by an engine drawing a passenger train of defendant company and instantly killed. At the close of the testimony on behalf of the plaintiff a motion for a nonsuit was made, based upon two grounds: "1st. That the testimony had tended to prove only that the deceased had been killed by defendant's train while he was walking along defendant's track at a place that was neither a 'public crossing' nor 'traveled place.' 2d. That there was no evidence tending to show that he was seen by the engineer running the train by which he was killed, or that he was in a position of apparent danger, consequently there was no testimony tending to show negligence on the part of the defendant company or its servants." This motion was refused and the trial proceeded, and at the close of the testimony and argument of counsel the Circuit Judge charged the jury as set forth in the "Case." The jury rendered a verdict for the plaintiff, and a motion for a new trial having been made and refused, judgment was entered, and from such judgment defendant appeals upon the several exceptions set out in the record. For a proper understanding of the points made by this appeal the Reporter will set out in his report of the case the charge of the Circuit Judge and the exceptions.

It will be observed that the exceptions raise three general questions: 1st. Whether there was error in refusing the motion for a nonsuit (exceptions 1, 2 and 3). 2d. Whether there was error in the charge of the Circuit Judge (exceptions 4, 5, 6, 7 and 8). 3d. Whether there was error in refusing the motion for a new trial (exception 9). We will

proceed to consider these three general questions in their order.

First, as to the motion for a nonsuit.    It will be noticed that the grounds upon which the motion was based were reduced to writing, and as set out above, make only the questions whether there was any testimony tending to show that the place where the intestate was killed was neither a public crossing nor a "traveled place;" and whether there was any testimony tending to show that the deceased was seen by the engineer running the train by which he was killed, or that he was in a position of apparent danger, and, consequently, whether there was any testimony tending to show negligence on the part of the defendant; but they do not make what we regard as the controlling question in this case, to wit: whether there was any testimony tending to show *such* negligence as would make the defendant liable for killing a trespasser on its track, inasmuch as the undisputed fact was that the intestate was killed while walking along the defendant's track, where there was no crossing and where it was not a "traveled place."    Nor is such question made by either of the three exceptions (1, 2 and 3) imputing error in refusing the motion for a nonsuit.    On the contrary, the grounds of the motion for a nonsuit, as reduced to writing, as required by the 18th Rule of the Circuit Court, as well as the exceptions just referred to, raise but two questions: 1st.    Whether there was any testimony tending to show that the place where the intestate was killed, was either a public crossing or a "traveled place."    2d. Whether there was any testimony tending to show that the deceased "was seen by the engineer running the train by which he was killed, or that he was in a position of danger."

As to the first of these questions, while it is quite true that there was no testimony tending to show that the place where the intestate was killed, was either a public crossing or a "traveled place," yet that alone would not justify a nonsuit, for that would be to assume that a railroad company would not be held liable for injuring or kill-

ing a person at any point on its track, except at a public crossing or on a "traveled place"—a proposition which, certainly, cannot be sustained; for, as we shall presently see, a railroad company may be held liable for killing or injuring even a bald trespasser, at *any* point on its track under certain circumstances, which will hereinafter be adverted to.

As to the second of these questions, an examination of the "Case" shows that there was *some* testimony tending to show that the engineer did see the deceased on the track, and as a person walking on a railroad track in front of an approaching train is always "in a position of apparent danger," we think there was, at least, some evidence tending to show that the engineer running the train saw that the deceased was in a position of apparent danger; and, therefore, we are of opinion that there was no error in refusing the motion for a nonsuit upon either of the grounds upon which such motion was based.   These exceptions are, therefore, overruled.

The second general exception—whether there was error in the charge of the Circuit Judge, as imputed thereto by exceptions 4, 5, 6, 7 and 8—will next be considered.   For a proper appreciation of the points made by these exceptions it will be necessary to recall some of the undisputed facts of this case.   It is not, and indeed cannot be, pretended, that the place where the plaintiff's intestate was struck and killed was either a public crossing or a "traveled place," or that either the public or the intestate has ever acquired the legal right to use the track of the defendant company even as a footpath, at the point where the disaster occurred.   The most that could be or was said, was that persons were in the habit of using the track at that point as a footpath, and that defendant company had taken no steps to manifest its objection to such use of its track.   But that is not and cannot be claimed to have been sufficient to confer upon any person the legal right to use the track, at pleasure, as a footpath.   It only amounts to this, that while the defendant company was legally entitled to the exclusive use of its track for the purpose of trans-

porting the mail, passengers and freight, it did not churlishly forbid persons from walking along its track at such times as would not interfere with the running of its trains.   In this case there was no testimony tending to show that either the public or the intestate had ever acquired the legal right to use the defendant's track at the point where the disaster occurred; indeed, there is no allegation to that effect in the complaint, and the jury were so instructed by the Circuit Judge.   So that the case presented by the pleadings and evidence is one in which the intestate was killed at a point on defendant's track where he had no legal right to be, though he and others in that neighborhood had been in the habit of using the track at that point as a footpath, and had never been forbidden to do so by the defendant company; and the first inquiry is what, if any, duty did defendant company owe to the intestate under these circumstances, and what are the rules of law applicable to such a case?   If one voluntarily goes upon the track of a railroad company, which is in daily, and sometimes hourly, use for the transportation of its trains, without legal authority, he becomes a trespasser, and the inquiry is narrowed down to the question, what duty, if any, does a railroad company owe to a trespasser on its track?   This matter has been considered in the case of *Smalley* v. *Railroad Company,* 57 S. C., 243, and the authorities cited.   In *Darwin* v. *Railroad Company,* 23 S. C., at page 535, it was said: "It must be manifest that a railroad company does not owe the *same* duty to a trespasser that it does to a passenger, or one of its employees, though we do not go to the extent of holding, as some of the cases (citing the cases) seem to do, that a railroad company owes *no* duty to one who trespasses on its tracks, or unlawfully intrudes himself upon its engines or cars.   No one can safely disregard the ordinary instincts of humanity, and shield himself from responsibility for an injury done, even to a trespasser, by its wanton or reckless disregard of such instincts."   So, also, in the case of *Hale* v. *Railroad* Co., 34 S. C., 292, a case which, in one respect at least, is very much like the case under

consideration, for there, as here, the disaster occurred at a point where there was neither a public crossing nor a "traveled place," but at a point where persons were accustomed to pass for their own convenience, and there was no evidence that they had even been forbidden or warned by the railroad company against so doing, the same doctrine was applied. In a note to *Central Railroad &c. Co.* v. *Vaughan,* 30 Am. Rep., at page 54, Mr. Freeman, the learned editor, discusses the question as to what duty a railroad company owes to a trespasser on its track, and after saying : "that the company is responsible only for wilful or wanton injuries, or for injuries resulting from a degree of negligence equivalent thereto, is a principle regarding which there seems to be no disagreement (citing cases)," states the true doctrine as follows : "The true principle, it is conceived, is, that the engineer should see that the track is clear; but that when an obstruction is perceived, the proper course to adopt will depend upon whether it is a living or inanimate object, whether it is an intelligent human being, under ordinary circumstances, of discerning the means of securing safety, or a brute, which has no guide but mere instinct.   If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has a right to presume that he will get out of harm's way before the engine reaches him, and that it is not negligence to act upon that presumption"—citing the cases.   To the same effect, see 19 Am. & Eng. Ency. of Law, 935-937, and also 3 Elliott on Railroads, sec. 1253. All these authorities are cited, with approval, in *Smalley* v. *Railroad Co., supra.*   Looking at the charge of the Circuit Judge in the light of these well settled doctrines, it seems to us that he has failed to discriminate between the measure of the duty which a railroad company owes to a passenger or to one rightfully upon its track, and that which it owes to one who is on its main track without any legal authority ; in the former case a much higher degree of care being required than in the latter.   That this distinction was ignored by the Circuit Judge is clearly pointed out in those portions of the

charge quoted in the several exceptions to the charge mentioned above, and this is emphasized by the language used by the Circuit Judge in his order refusing the motion for a new trial, where, in speaking of the proposition contended for by counsel for the defendant, "That the action can be maintained *only* by proof that the alleged injury to the deceased was caused by the grossly negligent or wanton conduct of the engineer, or other agent of the company, in the running of the train," he said: "That is not my conception of the law," showing very clearly that the Circuit Judge was of opinion, which he impressed upon the jury, especially in his comments upon and modifications of defendant's requests to charge, as set forth in exceptions 6, 7 and 8, as well as in charging plaintiff's requests to charge, as set forth in exceptions 4 and 5, that to entitle the plaintiff to recover, it was not necessary to prove that the killing of the intestate was wilful or wanton, or was the result of such gross negligence as would amount to a reckless disregard of human life, which was in direct conflict with the well settled rule, as shown by the authorities above cited.    These exceptions are sustained.

The ninth exception must be overruled, as it has been held in a number of cases that in an appeal from a motion either granting or refusing a new trial, this Court has no jurisdiction to pass upon the weight or the effect of the evidence.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

On petition for rehearing, the following order was filed April 18, 1902:

On examination of this petition, it fails to satisfy us that any material facts or prinicple of law have either been overlooked or disregarded.    Hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed and the stay of remittitur heretofore granted be revoked.