17323

EULA MAE BAILES, Respondent, v. THE SOUTHERN RAILWAY
COMPANY, Appellant

(99 S. E. (2d) 195)

See also 227 S. C. 176, 87 S. E. (2d) 481.

*W. G. Finley, Esq.,* of York, *for Appellant,* 

*Charles B. Ridley, Esq.,* of Rock Hill, *for Respondent,*

July 9, 1957.

TAYLOR, Justice.

The action from which this appeal stems was brought in the Court of Common Pleas for York County for damages arising out of the alleged wrongful death of Forrest Leonard Moss, whose mangled body was found strewn along appellant's right-of-way within the yard limits of Sharon, South Carolina, early on the morning of September 12, 1948.

The complaint is upon the theory that the deceased was struck and killed by appellant's railroad train at approximately 8:30 p. m., September 11th, when it was going from Blacksburg, South Carolina, to Sharon, South Carolina, "while the said Forrest Leonard Moss was either walking along said track or right-of-way, or was endeavoring to cross the said track or right-of-way or was *otherwise* upon said track or right-of-way * * *" (Emphasis ours.) Other portions of the complaint are to effect that the deceased was struck and killed in a grossly negligent, willful, and wanton manner while helpless upon appellant's track. The specifications of negligence being:

"(a) That the engineer, fireman or other operator and/or employee of Defendant Railway Corporation, for whose acts Defendant Corporation is liable, failed to keep a proper lookout for persons, property or otherwise on said tracks or right-of-way.

"(b) That the aforesaid agents of Defendant Corporation failed to give any warning signals or otherwise.

"(c) That the aforesaid agents of Defendant Corporation failed to slacken the speed of Defendant's locomotive when they saw, or could have seen, deceased in clear view on said tracks or right-of-way.

"(d) That the aforesaid agents of Defendant Corporation failed to apply brakes within a safe distance after observing deceased in clear view on this straight track.

"(e) That the aforesaid agents of Defendant Corporation failed to exercise any humanitarian duty toward deceased, after having admittedly seen deceased on this track or right-of-way.

"(f) That the aforesaid agents of Defendant Corporation failed to stop said train and render aid, comfort or otherwise to assist deceased, all in violation of the Statute Law of this State."

Appellant set up by way of answer a general denial.

Upon trial, timely motions were made by appellant for a nonsuit and a directed verdict upon the grounds that there

was a lack of testimony of any negligence on the part of appellant sufficient to require submitting the case to the jury and that there was no testimony as to the status of the deceased whether a trespasser or a licensee. The motions were overruled and the case submitted to the jury which returned a verdict for the plaintiff in the amount of $10,000.00. Appellant thereafter moved for judgment *non obstante veredicto* and in the alternative for a new trial upon the grounds that: "(1) Plaintiff has failed to establish actionable negligence; (2) that Plaintiff's Complaint did not allege that intestate was on the track as a licensee; (3) that Plaintiff failed to establish that intestate was a licensee; (4) that intestate was a trespasser and there was no evidence of any breach of duty owed Plaintiff's intestate; and (5) that the verdict would have to be based on speculation, conjecture and surmise."

The testimony to the effect that the deceased was sober and apparently normal a short while before the passing of the train, the condition and location of his body when found, and the description of the general area and other such testimony is uncontradicted. In addition, the one witness presented by appellant substantially admitted the pertinent parts of this testimony. It was established by several witnesses that plaintiff's intestate was apparently struck inside the yard limits of the Town of Sharon; that this was a populated area, with a sawmill nearby, a switch and siding from which pulpwood, granite, and other things were loaded upon appellant's cars. A number of homes were in the immediate vicinity, and there was a footpath upon the right-of-way. The weather was clear, the track was straight and nothing to obstruct the view. The scene was near the yard limit and a crossing, and there is contradictory evidence as to whether or not the required signals were given by the engineer who also testified that he saw something upon the track but made no effort to slow down or stop although he saw it in time but did not do so because he believed it to be one of several brown fertilizer bags which he had previously observed upon the right of

way. Upon cross-examination, it was brought out that respondent's intestate was killed approximately where the object was seen upon the tracks; a portion of the testimony being:

"Q. You described this white object you saw in the tracks. Where was it with reference to this sawmill you mentioned in your testimony previously? A. Well, it was between this what I took to be a paper bag—was between where I blowed the station blow and where I blowed the answer to the conductor's signal to stop at the station.

"Q. Not with reference to the blows, but with reference to the mill. Where was it with reference to the mill? A. The mill was over on the left-hand side, and I could not say just how near that bag was to the mill. I haven't ever studied that part out. * * *

"Q. Did you make any effort at all to stop when you saw this white object in your path? A. No, none whatever.

"Q. In fact, you didn't even slow down, did you? A. No, no."

It is not clear from the record whether or not the *white* object referred to upon cross-examination is the same *brown* object previously referred to; however, it does appear that the object seen was at or about the place where the intestate was killed. The engineer further stated that he was unaware that the train had struck anything until the next morning when upon the return run he approached the place in question and was flagged by one of a number of people who had gathered; and he then learned that a body was being removed from the right of way. There is testimony to the contrary, a portion of which quotes the engineer as having stated at that time, "* * * I know I hit something. Did not know whether it was a human, an animal or what it was. I know I hit something for I checked the train up at the depot." The engineer denied making such statement, and appellant contends that the testimony to the contrary had no probative value as it was given by the husband of respondent who had been convicted of housebreaking and larceny on two occasions and

the son of respondent who had come from Michigan to aid his mother in the case. Both witnesses were cross-examined with respect to this by appellant's counsel, the jury apprised of the circumstances, and the truth or falsity of this testimony became a question for the jury and not the Court. The engineer further stated that he was aware that this was a populated area and the public used the path along the right of way; that the track was straight and the night clear; that he was going about forty miles per hour and that his headlight was effective for approximately one-fourth mile, a distance sufficient to have stopped the train in time had he recognized the object as a person but thinking it an empty bag he did not slacken his speed.

■ Respondent proffered further testimony to show that the status of the deceased was that of a licensee. This evidence was objected to and excluded on the ground that Respondent had not so pleaded. Later in the trial, the presiding Judge announced:

"* * * after reflecting on that last night, I have completely changed my mind. I don't think that it is necessary for the plaintiff to plead affirmatively or prove affirmatively that the deceased was a licensee. I think it is sufficient that he had plead that he was on the right-of-way, that he was run over by the defendant's train it being an issue of fact for the jury to determine from all the facts and surrounding circumstances as to whether his status be that of trespasser, or that of a licensee under appropriate instructions. * * *

"I have just told counsel for the plaintiff having sustained an objection when he first offered that testimony, that I would allow him to open his case if he chose to do so as to further testimony along that line, but I am informed that he is satisfied with the testimony as it stands. Is that correct, sir?

"Mr. Ridley: Yes, sir."

And no further testimony was proffered along this line. Such testimony as had been admitted relative to the status

of the deceased prior to this was either without objection on the part of appellant, and cross-examined relative thereto, or through its own witness. Assuming without deciding appellant is correct in its contention, it is evident that no prejudice could have accrued by the trial Judge's ruling as no further evidence along this line was presented.

A railroad owes a duty to anticipate the presence of persons along or crossing its tracks at a well-defined pathway, at a place in which it has acquiesced in a somewhat general use thereof (not amounting to a legally established public use) or where the circumstances have been such that the presence of persons on or along the tracks at that particular place may reasonably be expected. *Miller v. Atlantic Coast Line R. Co.,* 225 S. C. 217, 81 S. E. (2d) 335.

"Even conceding that a railroad company is not bound, as a general proposition, to look out for trespassers upon its track, it nevertheless is bound to exercise ordinary care in running its trains. The law imposes upon it the duty of keeping a reasonable lookout for obstructions on its track. The safety of its passengers and the right of the public generally demand the enforcement of this rule. It is a general rule of law that a railroad company is liable in damages for an injury inflicted by it, when its negligence was the direct and proximate cause of the injury. If the direct and proximate cause of the infant's death was negligence of the defendant in failing to keep a reasonable lookout, and to discover the child in time to have prevented the injury, it is as much liable in damages as if the proximate cause of the injury had been its negligence after discovering the child upon its track.' " *Jones v. Atlanta-Charlotte Air Line Railway Company,* 218 S. C. 537, 63 S. E. (2d) 476, 479, 26 A. L. R. (2d) 297, quoting from *Mason v. Southern Ry.,* 58 S. C. 70, 36 S. E. 440, 53 L. R. A. 913.

The true principle, it is conceived, is that the engineer should see that the track is clear; but that, when an obstruction is perceived, the proper course to adopt

will depend upon whether it is a living or inanimate object, whether it is an intelligent human being, under ordinary circumstances, of discerning the means of securing safety, or a brute which has no guide but mere instinct. If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has the right to presume that he will get out of harm's way before the engine reaches him, and that it is not negligence to act upon that presumption. *Central R. & Banking Co. v. Vaughan,* 93 Ala. 209, 9 So. 468, 30 Am. St. Rep. 54; *Smalley v. Southern Ry. Co.,* 57 S. C. 243, 35 S. E. 489; and *Haltiwanger v. Columbia, N. & L. R. Co.,* 64 S. C. 7, 41 S. E. 810. In *Sentell v. Southern Ry.,* 70 S. C. 183, 49 S. E. 215, 217, the Court uses this language, in regard to a trespasser:

"It makes no difference if the trend of the testimony was that Sentell was a naked trespasser, the defendant owed him a duty, *viz.,* that he should not be treated by defendant without some regard to the dictates of humanity. There was positive testimony that the engineer could have seen Mr. Sentell in plenty of time to have stopped the train before reaching him, and thus have saved his life. All in all, there was testimony tending to show negligence." *Brissie v. Southern Ry. Co.,* 209 S. C. 503, 41 S. E. (2d) 97.

The evidence strongly indicates that the deceased was run over and killed by appellant's train, and the fact that an injury may have been caused in one or two or more ways does not preclude recovery if the facts and circumstances in evidence warrant a reasonable inference that it was caused in any way alleged in the complaint for which the appellant would be liable. *Steele v. Atlantic Coast Line R. Co.,* 103 S. C. 102, 87 S. E. 639; *Barnwell v. Elliott,* 225 S. C. 62, 80 S. E. (2d) 748; *Browder v. Southern Railway Company,* 226 S. C. 26, 83 S. E. (2d) 455.

Introduced into the record without objection was "Petition for Approval of Compromise Settlement under Lord Campbell's Statute," and the "Order Approving Compromise Settlement" in this case which was set aside by this

Court in *Bailes v. Southern Railway Co.*, 227 S. C. 176, 87 S. E. (2d) 481, 482, in which it is set forth:

"3. That on information and belief, on or about the 12th day of September, 1948, a train of the respondent, Southern Railway Company, traveling from Blacksburg, South Carolina, to Sharon, South Carolina, ran over and struck Forrest Leonard Moss, petitioner's intestate, at a point about one-fourth (¼) mile West of the Town of Sharon, South Carolina, on the right-of-way of the tracks of the Southern Railway Company, while the said Forrest Leonard Moss was either walking along said track or right of way, or was endeavoring to cross said track or right of way, or was lying upon the said track or right of way, and the above mentioned striking and running over of your petitioner's intestate immediately killed the said Forrest Leonard Moss."

There being sufficient evidence regarding one of the specifications of negligence as to require consideration by the jury, the motions for nonsuit, directed verdict, and judgment *non obstante veredicto* were properly overruled. *Miller v. Atlantic Coast Line R. Co., supra; Young v. Charleston & Western Carolina Railway Co.*, 229 S. C. 580, 93 S. E. (2d) 866.

Appellant also contends that the noise arising from the construction of a building next door to the courthouse made it difficult to hear and understand the witnesses who sometimes spoke in a low tone, rendering it difficult to follow the proceedings; and this condition is responsible for some of the testimony not being objected to. The record does not disclose appellant made any complaint to the trial Judge at the time; and it will not be considered first on appeal to this Court.

We are of the opinion that all exceptions should be dismissed and the judgment of the Court affirmed, and it is so ordered. Affirmed.

STUKES, C. J., and OXNER and LEGGE, JJ., concur.

MOSS, J., not participating.