8068

WOODWARD v. SOUTHERN RAILWAY.

RAILROADS — TRESPASSER—WILFULNESS — ISSUES — TRAVELED PLACE — EVI-
DENCE.—Evidence tending to show one was killed at a place on a
railroad track where people were accustomed to walk, on a dark
night, by a train running at a rapid speed without a headlight and
without giving crossing signals, carries to the jury the issue whether
the conduct of defendant's employees was merely inadvertent or
in reckless disregard of human life, as a railroad owes to a tres-
passer on its track the duty of so operating its trains as not to
injure him wantonly or by such gross negligence as indicates a
reckless disregard of human life.

The evidence here does not warrant the finding that deceased was
drunk and asleep on track when killed.

Failure to give the statutory signals is competent on the issue of
recklessness.


Before MEMMINGER, J., Aiken, Fall term, 1910.
Reversed.


Action by Lizzie Woodward, administratrix of Hamp.
Woodward, against Southern Railway—Carolina Division.
Plaintiff appeals.


*Mr. J. B. Salley,* for appellant, cites: *When nonsuit should
not be granted:* 86 S. C. 274; 62 S. C. 135; 66 S. C. 484;
68 S. C. 487; 85 S. C. 359; 25 S. C. 132; 82 S. C. 363; 77
S. C. 342.   *Was deceased a licensee?* 67 S. C. 506; 68 S.
C. 488; 75 S. C. 292.   *Failure to give statutory signals is
competent on issue of recklessness:* 52 S. C. 329; 58 S. C.
74; 64 S. C. 113; 78 S. C. 363; 85 S. C. 25; 87 S. C. 327;
83 S. C. 354.   *Railroad Co. waived its notice of no trespass:*
33 Cyc. 761; 87 S. C. 258; 135 Mass. 352; 79 S. W. 505,
394; 8 L. R. A. (N. S.) 1089.   *Was there contributory
negligence?* 86 S. C. 109; 40 L. R. A. 131; 42 N. E. 207;
53 At. 736; 69 S. C. 1; 72 S. C. 172; 23 Ency. 754,
748-56-9; 33 Cyc. 766, 772, 778, 780, 782, 792; 6 St. Ry.

R. 242; 11 L. R. A. (N. S.) 355; 8 L. R. A. (N. S.) 1076-79; 16 A. & E. Ann. Cas. 233; 65 S. C. 218; 8 Ency. 412; 19 S. C. 26; 61 S. C. 560; 68 S. C. 487; 70 S. C. 191; 86 S. C. 111.

*Messrs. Hendersons,* contra, cite: *Place of injury was not in populous community:* 86 S. C. 106; 41 S. C. 1; 61 S. C. 556; 64 S. C. 104; 67 S. C. 501; 68 S. C. 483; 82 S. C. 321; 72 S. C. 389. *Place of injury was posted with warning:* 85 S. C. 440; 63 S. C. 266; 67 S. C. 548; 68 S. C. 487; 85 S. C. 440; 61 S. C. 560; 86 S. C. 106. *Duty of railroad to trespasser:* 34 S. C. 136; 56 S. C. 248; 34 S. C. 299; 61 S. C. 559; 57 S. C. 243; 70 S. C. 183; 33 Cyc. 769, 778; 8 L. R. A. (N. S.) 1090; 33 S. W. 631; 113 A. S. R. 1032.

December 21, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This is an appeal from an order of nonsuit in an action for damages for death of plaintiff's intestate caused by alleged negligence of defendant. It appears that Hamp. Woodward on Sunday morning, September 6, 1908, was found dead lying on the north side of defendant's track 820 yards east of its depot at Montmorenci in Aiken county. The deceased was lying on his back, his body at right angle with the track and across the path alongside the track, and his head between the ends of two crossties, about on a level with the ties, some inches from the out edge of the rail.

There were two wounds upon his head, one from the middle of the forehead cutting off much of the right side of the head and breaking the skull, the other was a three cornered wound on the left side near back of the head fracturing the skull. These two wounds were separate. The left side of the face was in a bloodshot condition, and the back of the body was dark blue.

The hat of deceased was found some feet from the body in the direction of Montmorenci with the crown in a torn condition in front and on right side. The deceased lived near defendant's track about one mile east of Montmorenci where he conducted a farm and he also carried on a fish and butcher business in Montmorenci. On the night of September 5th he left Montmorenci to go home a short time before the arrival of the defendant's passenger train from Charleston to Augusta, due at Montmorenci about 9:30 p. m. He was last seen alive talking to the section master in the public road not far from Montmorenci depot eight or ten minutes before the arrival of the train, when he started for home on the public road. The night was cloudy, dark and rainy. Between the depot and the spot where the body was found there was a low place where the water settled, which caused the public road paralleling the railroad to become wet and sloppy, which pedestrians could avoid by using the railroad track. There was a public road on both sides of the railroad and on each side of the track there was a smooth, well beaten path. There was some testimony tending to show that the place where deceased met his death was a thickly settled country community on the edge of Montmorenci, and that the public since the building of the railroad in 1830, had been accustomed to use the track as a pathway, notwithstanding the sign boards placed at the crossings by the defendant some years previous to the death of intestate forbidding such use.

There was testimony that the engine was being operated that night without a headlight, having run from Whitepond by Montmorenci to Aiken, twenty-seven miles, without such light and that at Aiken the engineer placed a lantern in front for a light on the protest of a policeman. It was in testimony also, that the train was running behind schedule time and that the speed near the place where the body was found was forty-five miles an hour, and that no signal was given at Humphrey's crossing, not far east from where the body

was found.  For a considerable distance before reaching this spot the track was straight and down grade.  It is alleged that the train struck plaintiff and killed him as he was walking along side of the track in a populous community, where the public has been constantly using the track as a walkway, while running its train at a reckless speed on a dark night without headlight and without giving the signals required by statute.  The defendant besides a general denial alleged that if defendant was killed by contact with the defendant's train he brought it about by his own negligence in going upon the track of defendant in an intoxicated condition and lying down thereon.

In granting the nonsuit, Judge Memminger held that there was no evidence of negligence on the part of defendant, that there was no evidence that the absence of a headlight was the proximate cause of the injury, that the deceased was a trespasser and defendant owed him no duty except not to injure him wilfully or wantonly, after discovery on the track and they owed him no duty to discover him.  Further that the facts show that the deceased was drunk and asleep on the track and that his own negligence was the cause of his injury.

The testimony as to deceased's intoxication was meager. The witness, Shuler, testified that he saw Woodward that afternoon but was not right near him and that he seemed as if he had been drinking, judging by his talk and the fact that he staggered a little, or was not steady in his walk. This was a number of hours before the time of his death. On the other hand, there was testimony that the deceased was seen talking to the section master in an ordinary way eight or ten minutes before the arrival of the train, just before he started for home.  His body was found 820 yards from the depot and 700 yards from his own home.

So that on a dark rainy night he walked nearly a half mile to the spot where he died and the train ran from that spot to the depot all in eight or ten minutes.  Can it be said that

the evidence is conclusive that deceased was drunk and asleep on the track? If he was asleep with his head between the crossties, as when found, is it conclusive that the train could have struck him, if his head was level with the crossties, as one witness testified he was found lying?

We think the Court was clearly in error in basing the nonsuit on the ground that the evidence showed conclusively that deceased caused his own death by being drunk and asleep on the track.

It was much debated in argument whether the testimony showed that the deceased was a trespasser or a licensee. Let us waive that question and for the purpose of this appeal assume that deceased was a trespasser. The rule of law generally applicable in such case is that the railroad company owes to a trespasser on its track the duty of so operating its trains as not to injure him wantonly or by such gross negligence as indicates a reckless disregard of human life. *Smalley* v. *R.*·*R. Co.*, 57 S. C. 243, 35 S. E. 489; *Haltiwanger* v. *R. R. Co.*, 64 S. C. 8, 41 S. E. 810.

We think the testimony was sufficient to carry the case to the jury on the question of recklessness. The speed of the train on a dark night running without headlight and without regarding the statutory signals, through a thickly settled community, with the knowledge that many people were accustomed day and night to use the track as a walkway would seem to warrant submission to the jury to determine whether the conduct of defendant's employees was merely inadvertent, or was in reckless disregard of human life. *McKeown* v. *R. R. Co.*, 68 S. C. 488, 47 S. E. 713. The failure to give the statutory signals is competent testimony on the question of recklessness. *Goodwin* v. *R. R. Co.*, 82 S. C. 327, 64 S. E. 242; *Rowe* v. *R. R.*, 85 S. C. 25, 66 S. E. 1056.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.