# McNeil *v.* Munson Steamship Line.

*Damage for Injury to Servant.*

(Decided May 1, 1913.   Rehearing denied June 6, 1913.
62 South. 459.)

1. *Appeal and Error; Harmless Error; Pleading.*—Where plaintiff's amended complaint contained every averment of his original complaint, and entailed no additional burden on him in presenting his case for trial, he cannot complain of error in sustaining demurrers to his original complaint.

2. *Same; Evidence.*—Where a fact has already been shown without objection, it is not error to permit it to be again shown over objection.

3. *Same; Cured by Verdict.*—Where the verdict was in favor of defendant on the question of negligence on the whole evidence, including the conduct complained of as wanton negligence, the verdict cured any error of the trial court in withdrawing from the jury, the question of wanton or intentional negligence.

4. *Master and Servant; Relation; Contract.*—Plaintiff was a servant of the steamship company where it was shown that its superintendent had under him a white foreman who employed a colored foreman, who in turn employed and discharged the men comprising the gangs that loaded the ships, including plaintiff, and who were paid directly by defendant's cashier at the office of defendant's general manager.

5. *Same; Injury to Servant; Damages.*—Under the evidence in this case it was a question for the jury whether plaintiff was entitled to recover exemplary damages.

6. *Same; Presumptions and Burden of Proof.*—The mere fact of an injury to a servant does not itself give him a right of action, but he must show that the master was guilty of some breach of duty owed to him, for if the injury was the result of an accident or a misadventure against which the master could not provide by reasonable diligence, he could not recover.

7. *Same; Master's Duty; Safe Place to Work.*—A servant engaged in loading lumber on the deck of a steamship, which was a safe place to work when properly used, was not entitled to recover for injuries therefrom caused by conditions of danger produced by fellow servants in the course of their work when he himself was engaged in a similar service.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Albert McNeil against the Munson Steamship Line for injuries while engaged in its employment. Judgment for defendant, and plaintiff appeals. Affirmed.

The facts sufficiently appear from the opinion. Charge 17 is as follows: "The court charges the jury that the fact of plaintiff's injury does not of itself give him a right of recovery. To recover the plaintiff must show that the defendant was guilty of a breach of some duty that it owed plaintiff. If the jury believe from the evidence that defendant was not guilty of a breach of any duty owing to plaintiff, but that the injury to plaintiff was the result of an accident or misadventure, then plaintiff cannot recover."

"(19) The court charges the jury that if they believe from the evidence that the deck of the steamship on which plaintiff was at work was in itself a safe place to work when properly used, and that a condition of unsafety or danger was produced by reason of matters and things done by the defendant's employees in the course of their work, and that it was from this unsafety or danger that plaintiff was injured, then plaintiff cannot recover under the second count of the amended complaint, if the jury further believe from the evidence that plaintiff was himself an employee of defendant and engaged with other employees in performing the same service of loading the ship."

LESLIE B. SHELDON, and RICH & HAMILTON, for appellant. The court was in error in sustaining demurrers to the original complaint.—*Wolf v. Smith*, 149 Ala. 457; *West P. C. Co. v. Andrews*, 150 Ala. 368. The first count was not bad for uncertainty on account of the alternative allegations.—*H. A. & B. v. Miller*, 120 Ala. 535; *Montgomery St. Ry. v. Smith*, 146 Ala. 316.

The 4th count of the original complaint was not subject to demurrer, willfullness or wantonness being the legal equivalent of each other.—*M. J. & K. C. v. Smith,* 153 Ala. 127; *Parnell, Adm'r. v. B. & S. Co.,* 97 Ala. 298; *Webb's Case,* 97 Ala. 308; *Gothard's Case,* 67 Ala. 114; *Cook's Case,* 67 Ala. 533; *Vaughan's Case,* 93 Ala. 211. On these same authorities the court was in error in sustaining demurrer to the original 5th count. The act involved in this case was negligent in itself, or being wrongful in itself, was wantonly or intentionally done. *Warden v. L. & N.,* 94 Ala. 285; *K. C. M. & B. v. Burton,* 97 Ala. 240; *Andrews v. R. R. Co.,* 99 Ala. 439; *Hill v. R. R. Co.,* 100 Ala. 447; *George v. R. R. Co.,* 109 Ala. 245; *L. & N. v. Bouldin,* 110 Ala. 185; 91 Ga. 466; 108 Ill. 118; 57 N. E. 849; 23 Pac. 113. There is a distinction between the means themselves and the manner in which the means are used.—*K. C. M. & B. v. Burton,* 97 Ala. 240; *Andrews v. R. R. Co., supra.* The court was in error in giving charge 2.—*M. J. & K. C. v. Smith, supra; B. R. L. & P. Co. v. Landrum,* 153 Ala. 192; *Same v. Ryan,* 148 Ala. 69; *Browder's Case,* 110 Ala. 628; *Burgess' Case,* 114 Ala. 578; *Morrer's Case,* 116 Ala. 642. Wanton or wilful wrong is not negligence, and it is not necessary under such counts that the jury find that defendant was guilty of negligence.—*Pickard's Case,* 124 Ala. 374; *Hall's Case,* 105 Ala. 599. The difference between the causes of action has been clearly marked since *Markec's Case,* 103 Ala. 160; *L. & N. v. Orr,* 121 Ala. 497; *Ga. Pac. v. Lee,* 92 Ala. 262; *Merrill v. Sheffield Co.,* 169 Ala. 242. Wantonness is the legal equivalent for wilfullness.—*M. J. & K. C. v. Smith,* 146 Ala. 315; *Lewis' Case,* 148 Ala. 142; *Hyde's Case,* 61 South. 77; *Johnson's Case,* 61 South. 79; *L. & N. v. Perkins,* 152 Ala. 133. The court erred in giving charge 19.—*A. G. S. v. Vail,* 142 Ala. 134; *Smith v. Pio-*

*nccr M. & M. Co.*, 146 Ala. 234; 11 L. R. A. 773. Counsel discuss other charges refused, but without further citation of authority.

PILLANS, HANAW & PILLANS, for appellee. Where plaintiff is not entitled to recover error in charges or otherwise, is without injury.—*Griffin v. Foundry Co.*, 135 Ala. 490; *L. & N. v. Johnson*, 128 Ala. 634; *McTyer v. McDowell*, 36 Ala. 49. The evidence failed to disclose a relationship of master and servant, and hence, there could be no recovery.—*Scarbrough v. R. R. Co.*, 94 Ala. 497; *R. & D. R. R. Co. v. Chasteen*, 88 Ala. 591; *Harris v. McNamara*, 97 Ala. 181; *Ala. R. R. Co. v. Martin*, 100 Ala. 511; *Woodward I. Co. v. Brown*, 167 Ala. 316; 120 Fed. 761; 14 Am. St. Rep. 258; 68 Am. Dec. 348; 20 A. & E. Enc. of Law, 180. The plaintiff incurred no additional burden in presenting his case by amending his complaint, and the amended complaint contained every averment set out in the original complaint, hence, he cannot complain of error in overruling demurrers to his original complaint.—*Carleton v. C. of Ga.*, 155 Ala. 326. However, there was no error in sustaining demurrers to the original 1st, 4th and 5th counts.—*Whatley v. Zenida C. Co.*, 122 Ala. 118; *Phoenix I. Co. v. Moog*, 78 Ala. 301; *So. Ry. Co. v. Bunt*, 131 Ala. Ala. 594; *H. A. & B. v. Miller*, 120 Ala. 535. Where a fact has been stated without objection, it is not prejudicial error to admit further evidence thereof over objection.—*Faulkner v. State*, 151 Ala. 77; *Murphy v. State*, 118 Ala. 137. It is proper for the court to state to the jury on request that the facts do not justify a recovery for wanton injury, if in fact, they do not.— *L. & N. v. Richards*, 100 Ala. 365; *A. G. S. v. Hall*, 105 Ala. 599. The following cases give a fair illustration of the law of wantonness or wilfullness as definitely

fixed and determined in Alabama.—*L. & N. v. Banks,* 132 Ala. 471; s. c. 104 Ala. 508; *L. & N. v. Anchors,* 114 Ala. 492; *L. & N. v. Brown,* 121 Ala. 221; *So. Ry. v. Bunt, supra; A. G. S. v. Guest,* 144 Ala. 373; *Anniston P. Wks. v. Dickey,* 93 Ala. 418. Assignments of error not insisted on are waived.—6 Mayf. 33. The mere fact of injury alone does not authorize recovery. —1 Thompson on Neg. sec. 14; Watson on Damages secs. 1 and 2; Addison on Tort; sec. 3. Charge 17 asserts no more than this. The master's duty to furnish a safe place is performed when he constructs and maintains his place in such way that it is reasonably safe when prudently used, and danger which subsequently accrues by something done by the servants in the course and progress of their work, and which results in injury gives no cause of action.—48 N. Y. Supp. 74; 92 Fed. 884; Thomp. on Neg., vol. 4, secs. 7876-9; Bailey 167-8; LeB. 587-8. Charge 19 states this doctrine properly.

PELHAM, J.—Plaintiff (appellant) originally set up his cause of action in a complaint containing five counts, and each count declared or relied upon the relation of master and servant existing between the defendant and plaintiff. The first count alleged a breach of the common-law obligation of the master to furnish the servant a safe place to work. The second count was under subdivision 2 of the Employer's Liability Act (Code, § 3910). The third count was under subdivision 3 of the same act. The fourth count charged a wanton or intentional wrong under subdivision 2; and the fifth count was framed under subdivision 3, charging a wanton or intentional injury. Demurrers to the first, fourth, and fifth counts, based on the ground, principally it seems, that these counts contained alternative averments rendering them demurrable, were sustained by

the court, and the plaintiff filed an amended complaint containing 13 counts. In these 13 counts, as finally amended, to which demurrers were interposed but overruled, the plaintiff set up every matter declared on in the original complaint.

These counts splitting up the alternative averments contained in the same counts of the original complaint and setting them out in different counts of the amended complaint entailed no additional burden on the plaintiff in presenting his case on the trial; and, as they contained every averment declared on originally in the complaint filed by him and permitted the plaintiff to present every phase of his case without additional burden, the ruling of the court on the demurrers to the original complaint, if error, would be without injury, and a discussion of the assignments of error based on these rulings is unnecessary.—*Carleton v. C. of Ga. Ry. Co.,* 155 Ala. 326, 46 South. 495, 16 Ann. Cas. 445.

The appellee insists that a consideration of the whole case will show that the plaintiff was not entitled to recover, and that, as the court would have been justified in giving the general charge for the defendant, any errors committed in the progress of the trial would not be prejudicial or authorize a reversal of the case. This contention of the appellee is based on the proposition that, as each count of the plaintiff's complaint relies on the relation of master and servant as existing between the parties at the time of the injury, there could be no recovery in that the undisputed evidence shows such a relation did not exist.

It appears from the evidence set out in the bill of exceptions that the defendant was engaged in the shipping business, operating a line of vessels carrying freight to and from the port of Mobile, and that, while a load of lumber in cars on the wharf was being loaded aboard

one of the defendant's steamships lying alongside a pier in the city of Mobile, the plaintiff, who was engaged at his duties on the deck of the steamer as a longshoreman in assisting in loading the cargo of lumber, was injured by being struck with a piece of timber that was being hoisted on board. The plaintiff was employed to perform the services at which he was engaged when injured in the following manner, and under the following circumstances: One Captain Erickson, who was the superintendent of loading for defendant company at Mobile, had under him a white foreman that employed or "picked up" a colored foreman, that in turn employed or "picked up" the men that formed the gangs that loaded the ships. The plaintiff was employed or engaged in the manner or way above described, by the colored foreman, to do the work at which he was occupied when injured, and constituted one of the gang loading a particular ship, the Trafalgar, on the occasion in question. Neither the white foreman nor the colored foreman is shown to be an independent contractor, but both were employees of the defendant company charged by it under the terms of their employment with the performance of certan duties respectively. The white foreman, it will be seen, employed the colored foreman, and this latter foreman hired a designated number of men to do a certain work and was charged with the duty of seeing that they performed the services for which they were employed. The colored foreman selected the men to do the work, and they were under his immediate orders while performing the duties for which they were employed, and this foreman was also the person who discharged the laborers thus engaged and was the one to whom they went for permission to do so when they wished to "knock off." The services of these men employed by the foreman were paid for by

the defendant company, through its cashier, at the office of the general manager directly to the men. There was no conflict in the evidence that the defendant's superintendent, Captain Erickson, and the white foreman, one Bonneau, employed the negro foreman, Lynch, and instructed him, in this particular instance, to get a gang to do the work, and that Lynch did get up the gang for this purpose, and that the plaintiff was one of the gang gotten up in this way.

The evidence, we think, establishes the relation of master and servant between the defendant and the plaintiff. The superintendent, Erickson, and the foreman, Bonneau, both had the right to give, and in actual practice and fact did give, directions and orders to the colored foreman, Lynch, who was under their control and direction, and through whom they had the power to control the selection and discharge of the men picked up by Lynch, who was not an independent contractor, but an employee of the defendant, having authority as part of his duties to employ and discharge workmen; and in performing this service he was acting for the master, his employer, in the nature of a vice principal. —*A. G. S. R. R. Co. v. Vail*, 142 Ala. 134, 38 South. 124, 110 Am. St. Rep. 23; *Smith v. Pioneer Mining & Mfg. Co.*, 146 Ala. 234, 41 South. 475; *L. & N. R. R. Co. v. Lile*, 154 Ala. 556, 45 South. 699.

Nothing that is said in the Alabama cases cited by the appellee in the least militates against our position as above stated. What is said in those cases as to what does and what does not establish the relation of master and servant has reference to the existence of that relation between the parties when the servant is under the management, orders, and control of an independent contractor of the master; when the servant, in other words, has another master. An examination of each of the

three cases cited and discussed by appellee (*Woodward Iron Co. v. Brown,* 167 Ala. 316, 52 South. 829; *Ala. Mid. R. Co. v. Martin,* 100 Ala. 511, 14 South. 401; and *Harris v. McNamara,* 97 Ala. 181, 12 South. 103) will show that the court in those cases was treating the question of master and servant as related to the question of an independent contractor. The distinctions and difference that appertain when work is done by the master through his own agencies and instrumentalities and when it is done through an independent contractor, who in that case is the master responsible for his acts and owes him the duty growing out of this relationship, are discussed in *Rome & Decatur R. v. Chasteen,* 88 Ala. 591, 7 South. 94 (cited, but not discussed, by appellee). The other case cited by the appellee (*Scarbrough v. Ala. Midland Ry. Co.,* 94 Ala. 497, 10 South. 316) was also on the proposition involving the question of an independent contractor.

The evidence shows that the plaintiff at the time of receiving the injuries complained of was on the deck of the ship engaged with other members of the loading gang in and about his duties of stowing up the lumber; that the ship was being loaded at night; that a long, heavy piece of lumber, a deal about 2 by 12 or 2 by 6, slipped from the sling load being drawn aboard by means of a hoisting apparatus consisting of block and tackle, etc., operated by an engine and winch, and fell end down in an upright position, jammed in between the ship's side and the wharf. When the remaining portion of the sling load was lowered to the deck, the plaintiff and others in his loading gang were ordered by the foreman Lynch, to whose orders they were bound to conform, "to stow up the lumber," and, while the plaintiff was engaged in the particular duties necessarily attendant upon the performance of this order, those in

charge of the loading undertook, by use of the tackle that had been cast loose from the sling load, to hoist the piece of timber on board that had slipped from the load. In doing this, one Reese Mingo, the gangwayman, who had charge of the working of the winch used in operating the tackle in hoisting the lumber aboard the vessel, hooked the tackle onto the deal or scantling that had fallen out of the sling load of lumber and told the winchman "to go ahead."

The testimony is in conflict as to whether or not this gangwayman at the time he gave the winchman the order to go ahead also gave a warning to the gang on deck engaged in stowing the lumber or allowed the piece of timber to be pulled up and fall on the plaintiff, one of the gang, without warning. Mingo, a witness for the defendant, and one other of defendant's witnesses testified that the warning was given, and several of the plaintiff's witnesses testified that no warning was given. Mingo, however, testified, on cross-examination by the plaintiff, that he did not hook the tackle onto the deal properly; that he hooked it too near the middle. It was shown that the natural consequences of such an improper hooking and then giving an order to go ahead with the hoisting machinery were that the piece of timber when raised would overbalance as it came aboard and "sweep the deck," as it did in this instance, causing the injury to plaintiff complained of.

As Mingo must have known that this overbalancing and "sweeping the deck" would result from his manner of hooking on when he gave the order to the winchman to go ahead, and as there was evidence affording a basis for an inference from which the jury might reasonably find that Mingo knew that the laborers, including the plaintiff, were on deck engaged in the duties of their employment at a place where they would likely be

struck and injured by the heavy piece of timber if they failed to get out of the way when it swept the deck, this negligence upon his part in improperly hooking the tackle onto the deal and giving an order to hoist away without warning to the laborers on deck stowing away the lumber might, as we think, if the jury believed this phase of the testimony, amount to such wanton disre-' gard of consequences in inflicting the injury that the jury might be justified in awarding punitive or exemplary damages, and the court was in error in giving written instructions at the request of the defendant taking from the jury the consideration of this question of imposing punitive damages under the counts containing averments making a claim for recovery of damages for the wanton conduct upon the part of one of the defendant's employees in inflicting the injury.—*B. R. L. & P. Co. v. Leach*, 5 Ala. App. 546, 59 South. 358.

This action of the trial court, however, would not authorize a reversal of the case, for the record affirmatively shows that the entire evidence, including that introduced in support of those counts of the complaint alleging the injury to have been wantonly or intentionally inflicted, was submitted to the jury on the counts alleging simple negligence, and yet the jury found the issue of negligence on the whole evidence in favor of the defendant. The act of negligence relied upon was included in and formed a part of the conduct of defendant's employee complained of as amounting to a wanton infliction of the injury; and, when the jury found the issue of negligence in favor of the defendant, then, under the evidence in this case, they virtually, in effect and in fact, determined the question of wantonness, for the wanton act was predicated upon the negligent act that was a part of it, and the former could not exist in the absence of the latter. In other words, the charge

of wantonness presupposes, under the evidence in this case, that the conduct complained of as wanton was at least negligent. Hence, any error in the court's not submitting the question of negligence as referred to counts alleging wanton or intentional injury did not injure the plaintiff, as appellant here, as it was rendered harmless, or without injury, by the verdict of the jury in favor of the defendant on the question of negligence on the whole evidence. If there was no negligence and no damages awarded for simple negligence, there could be, under the evidence of this case, no imposition of damages added, of course, by way of punishment for the infliction of a wanton injury, as it must be inferred from the finding of the jury that they ascertained that the warning was given and that no negligence was shown authorizing a recovery against the defendant. This finding was conclusive against the plaintiff's right of recovery on the issues involved and precluded the basis for a finding against the defendant on the issues of wantonness under the evidence in this case.

Charge No. 17 is a good charge, and giving it would not constitute error even if, as contended by appellant, the charge ignored the counts which charged wanton injury, which we do not think was the effect of the charge.

Count No. 2 of the complaint, as amended, alleges the injury to be due to the negligent failure of the master to keep the place on the deck of the vessel in which the servant performed his labors in a reasonably safe condition; and charge No. 19, given at the request of the defendant and limited in its application to that count, states a correct proposition of law. This count of the complaint is not based on the negligence of some one in the employ of the defendant having superintendence intrusted to him, or for whose negligence the defendant

was liable when acting in the nature of a vice principal, or the negligence of some person to whose orders the plaintiff was bound to conform, but only for the master's primary negligence in failing to keep the place on the deck where the defendant worked in a reasonably safe condition. It is not the negligence of Bonneau, Lynch, or Mingo in carrying on the work that is declared on and relied upon in the count to which this charge was limited, but the duty of the master to keep in repair a safe place for the servant to work; and, as hypothesized on the jury's belief in the evidence, the charge states the correct rule of law applicable to the negligence counted upon.—Labatt on Master and Servant, §§ 587, 588.

The ruling on the evidence complained of does not constitute prejudicial error. The question propounded to the witness Bonneau, "Was it or not an ordinary way of doing this work, the way that it was done in this case?" was not objectionable for the general reasons assigned; however, proof of the same matters called for by this question had been previously repeatedly made by other witnesses without objection, and there was no evidence of a contradictory nature on this point offered. The plaintiff himself testified: "It was a common thing for a piece of lumber or scantling to fall between the ship and wharf, and that was the way they always got it out; that it almost always overbalances, and I knew that."

It is not prejudicial error to allow the same fact to be again shown against objection when it has already been shown without objection.—Falkner v. State, 151 Ala. 77, 44 South. 409.

We have carefully examined the evidence set out in the bill of exceptions in connection with the assignment of error based on the refusal of the court to grant the

plaintiff a new trial because the verdict was not supported by or was against a preponderance of the evidence; but, after a due consideration of the evidence and the argument of counsel on this point, we are unable to say under the rule governing us, in passing on this question, that the court below was in error in overruling the motion for a new trial; and, as we find in the errors pointed out and discussed by appellant nothing that would authorize a reversal, the judgment appealed from will be affirmed.          •

Affirmed.


### *Damage for Injury to Servant.*

